IN THE CIRCUIT COURT OF THE 12th
JUDICIAL CIRCUIT, IN AND FOR
MANATEE COUNTY, FLORIDA

CASE NO.: 2016CA000798AX

KEVIN LEE BURNS,

    Plaintiff,

vs.

UNIVERSAL HEALTH SERVICES;
SUNCOAST BEHAVIORAL HEALTH CENTER;
JOSEPH ALTUCHOLF; CYNTHIA HARDEN;
BRANDY HAMILTON; JUDITH SASNAUSSKAS,
CHERYL PEARSON; DR. VERAB; and J. HINMAN,

    Defendants.
_____/

## DEFENDANT, UNIVERSAL HEALTH SERVICES, MOTION TO DISMISS PLAINTIFF'S NOTICE OF INTENT AND/OR MOTION FOR MORE DEFINITE STATEMENT

Defendant, UNIVERSAL HEALTH SERVICES ("UHS"), by and through undersigned counsel, and pursuant to Fla. R. Civ. P. 1.140, moves this Court for entry of an Order Dismissing Plaintiff's Notice of Intent to Initiate Litigation and/or in the alternative, an Order for More Definite Statement, and/or in the alternative an Order Striking Erroneous Allegations from the Intent to Initiate Litigation, and states in support thereof:

1. Plaintiff has filed a Notice of Intent to Initiate Litigation ("Notice of Intent") with this Court on February 18, 2016.

2. Apparently, this Notice of an Intent is meant to serve as a Complaint containing two claims brought under the 1986 Federal Emergency Medical Treatment & Labor Act, 42

U.S.C.A. § 1395dd ("Federal EMTALA").[1] See pgs. 1 and 2 of Plaintiff's Notice of Intent, attached hereto as **Exhibit "A."**

3. Plaintiff has named UHS as a Defendant to this lawsuit but has failed to allege any allegations that would connect UHS to the EMTALA claims. Plaintiff's Notice of Intent contains allegations regarding EMTALA violations that occurred at Defendant, SUNCOAST BEHAVIORAL HEALTH CENTER ("SUNCOAST"), but fails to identify the relationship between UHS and SUNCOAST as to impute any alleged liability or violations to UHS.

4. Additionally, even if this Court somehow found that Plaintiff did in fact allege a proper legal relationship between UHS and SUNCOAST, such as that of a parent corporation and subsidiary, under prevailing Florida law, a parent corporation cannot be liable for the torts of it's subsidiaries. Plaintiff is seeking civil remedies in this action. Therefore, UHS should be properly dismissed from the Complaint.

5. Furthermore, UHS was also not properly served with a Complaint and Summons pursuant to this Florida Statute §48.081 and Florida Rule of Civil Procedure §1.070. Therefore, UHS seeks dismissal of this lawsuit pursuant to Florida Statute §1.140(b) for improper process, insufficient service of process and lack of personal jurisdiction.

---

[1] Plaintiff does not entitle the initial pleading a Complaint, but instead, a Notice of Intent to Initiate Litigation. To the extent Plaintiff is attempting to set forth his pleading as a Complaint, Plaintiff has failed to comply with Fla. R. Civ. P. 1.100, which requires a Complaint to be filed with the proper captioning and numbered paragraphs. Plaintiff has also failed to comply with Fla. R. Civ. P. 1.110(b), General Rules of Pleadings, and has failed to include (1) a short and plain statement of the grounds upon which the court's jurisdiction depends; and (2) a short and plain statement of the ultimate facts showing that the pleader is entitled to relief. Thus, Plaintiff's initial pleading should be dismissed for failure to comply with the general rules of pleadings. Dewitt v. Rossi, 559 So. 2d 659 (Fla. 5th DCA1990)( "Trial court may dismiss with prejudice complaint containing multiple and narrative allegations involving multiple sets of circumstances and failing to comply with requirement to make averments in consecutively numbered paragraphs.").

Furthermore, if Plaintiff is bringing forth this pleading as a Notice of Intent under Fla. Stat. §766.106 for medical negligence claims, Defendants move to dismiss this Complaint for failure to comply with the proper presuit requirements under §766.106.

6. Plaintiff has also failed to state a claim for which relief may be granted against UHS by failing to allege the necessary elements and sufficient ultimate facts that would establish a prima facie Federal EMTALA claim. It is also unclear which subsection of Federal EMTALA Plaintiff is relying on as the basis for this Notice of Intent against UHS. Therefore, Plaintiff's Notice of Intent should be dismissed in compliance with Florida Statute §1.140(b) or in the alternative, Plaintiff should be required to provide a more definite statement pursuant to Florida Statute §1.140(e).

7. Lastly, Plaintiff has included numerous impertinent and erroneous allegations in the Notice of Intent, which have no bearing on the EMTALA claims as alleged and should be stricken from the Notice of Intent pursuant to Florida Statute §1.140(f).

## I. MOTION TO DISMISS: UHS IS NOT PROPERLY NAMED AS A DEFENDANT TO THIS ACTION UNDER PREVAILING FLORIDA LAW

Plaintiff has named UHS as a Defendant to this lawsuit in the Notice of Intent. However, Plaintiff fails to properly allege the legal relationship between UHS and SUNCOAST that would give rise to liability on behalf of UHS for events that are alleged to have occurred at SUNCOAST. See pages 1 and 2 of the Notice of Intent. Plaintiff simply alleges that UHS violated EMTALA on page 3 of the Notice of Intent. However, Plaintiff goes on to specifically allege that the Federal EMTALA violations occurred at SUNCOAST, Plaintiff does not adeqautly describe how the two entities are related in anyway. Therefore, taking the allegations in the Complaint as true, there are no allegations of EMTALA violations against the Defendant, UHS, and UHS should properly be dismissed from the Notice of Intent.

Even if this Court found that somehow Plaintiff pled a viable legal relationship between SUNCOAST and UHS, such that UHS could be said to be the parent corporation/owner of SUNCOAST, UHS is still not a proper party to this lawsuit.

A parent corporation and its wholly-owned subsidiary are separate and distinct legal entities. As a separate legal entity, a parent corporation is not liable for torts committed by its subsidiary and cannot exercise the rights of its subsidiary. See Am. Int'l Grp., Inc. v. Cornerstone Businesses, Inc., 872 So. 2d 333, 336 (Fla. 2nd DCA 2004). Additionally, a parent corporation will not be held liable for the actions of its subsidiary unless the subsidiary is deemed to be a mere instrumentality of the parent. Unijax Inc. v. Factory Insurance Association, 328 So.2d 448 (Fla. 1st DCA 1976). For a subsidiary to be considered a mere instrumentality of a parent corporation, there must be: (1) control of the parent over the subsidiary "to the degree that it is a mere instrumentality." (2) parent committed fraud or wrongdoing through its subsidiary. (3) unjust loss or injury to a claimant, such as when the subsidiary is insolvent. A mere instrumentality finding is rare. See Am. Int'l Grp., Inc. v. Cornerstone Businesses, Inc., 872 So. 2d 333, 337 (Fla. 2nd DCA 2004).

As held by the Supreme Court of the United States:

> It is a general principle of corporate law deeply "ingrained in our economic and legal systems" that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries. Douglas & Shanks, *Insulation from Liability Through Subsidiary Corporations*, 39 Yale L.J. 193 (1929) (hereinafter Douglas); see also, e.g., Buechner v. Farbenfabriken Bayer Aktiengesellschaft, 38 Del.Ch. 490, 494, 154 A.2d 684, 687 (1959); Berkey v. Third Ave. R. Co., 244 N.Y. 84, 85, 155 N.E. 58 (1926) (Cardozo, J.); 1 W. Fletcher, *Cyclopedia of Law of Private Corporations* § 33, p. 568 (rev. ed. 1990) ("Neither does the mere fact that there exists a parent-subsidiary relationship between two corporations make the one liable for the torts of its affiliate"); Horton, *Liability of Corporation for Torts of Subsidiary*, 7 A.L.R.3d 1343, 1349 (1966) ("Ordinarily, a corporation which chooses to facilitate the operation of its business by employment of another corporation as a subsidiary will not be penalized by a judicial determination of liability for the legal obligations of the subsidiary"); cf. Anderson v. Abbott, 321 U.S. 349, 362, 64 S.Ct. 531, 537, 88 L.Ed. 793 (1944) ("Limited liability is the rule, not the exception"); Burnet v.

Clark, 287 U.S. 410, 415, 53 S.Ct. 207, 208, 77 L.Ed. 397 (1932) ("A corporation and its stockholders are generally to be treated as separate entities"). Thus it is hornbook law that "the exercise of the 'control' which stock ownership gives to the stockholders ... will not create liability beyond the assets of the subsidiary.

United States v. Bestfoods, 524 U.S. 51, 61-62 (1998).

Plaintiff does not allege any of the above factors to establish a prima facie case against UHS for the alleged Federal EMTALA violations for which Plaintiff seeks civil recourse.

As with many principles in law, there is an exception for when a stockholder, director or officer may be held personally liable for corporate acts. That exception is when the corporate veil is pierced. However, this exception does not apply to this action or has not even been plead as existing to allow liability to flow to any other entity other than the corporation. This exception was explained at length in Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1349-50 (11th Cir. 2011).

> It is black letter law in Florida that to disregard this corporate fiction and hold the corporation's owners liable—to "pierce the corporate veil"—the plaintiff must prove that:
>
> (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation;
>
> (2) the corporate form must have been used fraudulently or for an improper purpose; and
>
> (3) the fraudulent or improper use of the corporate form caused injury to the claimant.
>
> Gasparini v. Pordomingo, 972 So.2d 1053, 1055 (Fla. 3d DCA 2008) (emphasis added) (citations omitted); see also 8A Fla. Jur.2d Business Relationships § 13 (2008). *"Shareholders" include individuals who own stock*, see, e.g., McCormack v. Ribbeck, 702 So.2d 271, 271–72 (Fla. 1st DCA 1997), *and parent companies who own their subsidiaries*, see, e.g., 17315 Collins Ave., LLC v. Fortune Dev. Sales Corp., 34 So.3d 166, 168 (Fla. 3d DCA 2010).

5

> The theme of ownership underlies Florida's leading case on piercing the corporate veil, Dania Jai-Alai Palace, Inc., v. Sykes, 450 So.2d 1114 (Fla. 1984). In Sykes, the plaintiff sued a parent company and its two subsidiaries. Although only one of the subsidiaries committed the tort in question, the plaintiff alleged that the subsidiaries operated as one entity and that these subsidiaries were the "mere instrumentalities" of the parent, which should be liable for the subsidiary's actions. Id. at 1116. The trial court accepted this argument and the district court of appeal affirmed, holding that the plaintiff need not prove any fraud or wrongdoing on the part of the parent corporation, the subsidiaries' owner. Id.
>
> The Florida Supreme Court rejected this understanding, and in doing so, based the rationale for piercing the veil on shareholder liability. ***The court explained that shareholders incorporate to limit their liability, creating a separate entity that is "apart from its stockholders."*** Id. at 1118*1350 (quoting Riesen v. Md. Cas. Co., 153 Fla. 205, 14 So.2d 197, 199 (1943)). Correspondingly, ***courts will not ignore this separate entity so long as the stockholders make "proper use" of this fiction; they must not use limited liability to defraud creditors.*** Id. (citing Riesen, 14 So.2d at 199; Barnes v. Liebig, 146 Fla. 219, 1 So.2d 247, 253–54 (1941)). It is when shareholders "improperly disregard[ ] the corporate identities" that litigants may peel back the veil of limited liability and hold the corporation's owners responsible for its debts. Id.

Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1349-50 (11th Cir. 2011)(emphasis added).

For UHS to be liable for acts of any of its subsidiaries under agency theories, it must exercise control to the extent the subsidiary "manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation." Vantage View, Inc. v. Bali East Development Corp., 421 S. 2d 728 (Fla. 4th DCA 1982), modified on other grounds by Dania Jai-Alai Palace v. Sykes, 450 So. 2d 1114 (Fla. 1984). There are no allegations contained within the Notice of Intent of a legal relationship between UHS and SUNCOAST, let alone allegations that would impose liability on a parent corporation for the acts of its subsidiary. For these reasons, Plaintiff has failed to state a cause of action against UHS and that entity

should properly be dismissed.

## II. MOTION TO DISMISS FOR INSUFFICIENT PROCESS AND/OR INSUFFICIENT SERVICE OF PROCESS AND/OR LACK OF PERSONAL JURISDICTION

The Notice of Intent in this matter was improperly served on UHS pursuant to Florida Statutes §48.081, Service on a Corporation, and §1.070.

Plaintiff mailed a copy of the Notice of Intent to UHS on February 18, 2016 and it was received by the mail room at the Executive Offices of UHS on February 19, 2016. UHS is located in King of Prussia, Pennsylvania and is a foreign corporation. A copy of the Envelope Containing the Notice of Intent is attached hereto as **Exhibit "B."**

Pursuant to Fla. Stat. §48.081(1), process against a private corporation, both domestic and foreign, may be served in the following ways:

(a) On the president or vice president, or other head of the corporation;
(b) In the absence of any person described in paragraph (a), on the cashier, treasurer, secretary, or general manager;
(c) In the absence of any person described in paragraph (a) or paragraph (b), on any director; or
(d) In the absence of any person described in paragraph (a), paragraph (b), or paragraph (c), on any officer or business agent residing in the state.

According to subsection (2) of the statute, if a foreign corporation has none of the foregoing officers in the state, service may be made on any agent transacting business for in in Florida.

None of the above options were implemented by Plaintiff.

Plaintiff also had another option under subsection (3) of the statute:

(3)(a) As an alternative to all of the foregoing, process may be served on *the agent designated by the corporation under s. 48.091*. However, if service cannot be made on a registered agent because of failure to comply with s. 48.091, service of process shall be permitted on any employee at the corporation's principal place of business or on any employee of the registered agent. A person attempting to serve process pursuant to this paragraph may serve the process on any employee of the registered agent during the first attempt at service even if the registered agent is temporarily absent from his or her office.

§ 48.081(3), emphasis added.

7

The registered agent of UHS was also not served in this case in accordance with the statute.

Furthermore, Plaintiff failed to follow the rules as outlined in Fla. R. Civ. P §1.070, Process, for the mailing of service of process. This rule requires that the Complaint be accompanied by a request that the defendant waive service of summons and must be dispatched by certified mail with a return receipt requested. Id. The rule further requires that the notice and request for waiver be addressed directly to an authorized agent. Id.

The burden of proof to sustain the validity of service of process is upon the person who seeks to invoke the jurisdiction of the court. Youngblood v. Citrus Associates of New York Cotton Exch., Inc., 276 So. 2d 505, 509 (Fla. 4th DCA 1973).

Because service was improper in this case, this Court lacks personal jurisdiction over the DEFENDANTS. M.J.W. v. Dep't of Children & Families, 825 So. 2d 1038, 1041 (Fla. 1st DCA 2002).

WHEREFORE, UHS moves this Court for entry of an Order Dismissing the Complaint for Insufficient Service of Process and/or Insufficient Process and/or Lack of Personal Jurisdiction, and all other relief this Court deems appropriate.

### III. MOTION TO DISMISS FEDERAL EMTALA CLAIMS

#### A. Motion to Dismiss Both EMTALA Claims for Failure to State a Cause of Action and/or Motion for More Definite Statement

Plaintiff has apparently alleged two EMTALA claims in the Notice of Intent. See pages 4 and 5 of the Notice of Intent. First, it is unclear what subsection of the Federal EMTALA statute Plaintiff is relying on for relief in either claim.

The purpose of pleadings is to present, define and narrow the issues, and to form the foundation of the proof to be submitted at trial. Hart Properties, Inc. v. Slack, 159 So. 2d 236,

239 (Fla. 1963). The complaint must set out the elements and the ultimate facts that support them so that the court and the defendant can clearly determine what is being alleged, and the defendant can properly defend itself. Barrett v. City of Margate, 743 So. 2d 1160, 1162 (Fla. 4th DCA 1999). Mere conclusions are insufficient. Clark v. Boeing Co., 395 So. 2d 1226, 1229 (Fla. 3d DCA 1981). Furthermore, it is proper to dismiss a complaint for failure to plead a required element of the cause of action. Id.

In order to state a prima facie claim for violations of EMTALA, Plaintiff must allege under 42 U.S.C. § 1395dd(a) that the hospital failed to provide for an appropriate medical screening examination within the capability of the hospital's *emergency department* when an individual comes to that emergency department and requests examination or treatment. Money v. Banner Health, 3:11-CV-00800-LRH, 2012 WL 2885362, at *2 (D. Nev. 2012)(emphasis added).

However, pursuant to 42 U.S.C §1395(b), the Plaintiff must establish that (1) the patient had an emergency medical condition; (2) that hospital actually knew of condition; (3) that the patient was not stabilized before transfer, and (4) that the transferring hospital did not obtain proper consent or follow appropriate certification and transfer procedures before transferring unstable patient. Baber v. Hosp. Corp. of Am., 977 F.2d 872 (4th Cir. 1992). Furthermore, Transfer requirements of Emergency Medical Treatment and Active Labor Act (EMTALA) do not apply unless hospital actually determines that patient suffers from emergency medical condition that would require stabilization before patient could be transferred to another facility. Baber v. Hosp. Corp. of Am., 977 F.2d 872 (4th Cir. 1992).

It is unclear whether Plaintiff is bringing this claim under subsection (a) or subsection (b) of Federal EMTALA, and therefore UHS cannot adequately and completely address Plaintiff's

allegations. UHS requests that this Court require Plaintiff to provide a more definite statement in order for UHS to be able to provide a proper defense to Plaintiff's claims. Fla. Stat. §1.140(e)("If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, that party may move for a more definite statement before interposing a responsive pleading). See also Foerman v. Seaboard Coast Line R. Co., 279 So. 2d 825, 827 (Fla. 1973).

Furthermore, if Plaintiff is in fact alleging that subsection (a) of Federal EMTALA was violated by UHS in some way, Plaintiff has failed to allege first, that UHS has a legal relationship with SUNCOAST that would impute liability onto UHS for violations that allegedly occurred at SUNCOAST, and second, that SUNCOAST BEHAVIORAL was a participating hospital with an emergency room department capable of treating Plaintiff's alleged emergency condition. As stated by the court in Miller v. Med. Ctr. of S.W. La., 22 F.3d 626 (5th Cir. 1994):

> "Under the terms of the statute, however, these duties are only triggered when an individual "*comes to* the emergency department *and a request is made* on the individual's behalf for examination or treatment...." 42 U.S.C. § 1395dd (emphasis added). These two preconditions are conjunctive requiring both that an individual 1) comes to the emergency department and 2) that a request be made. In the instant case, it is the first requirement that is problematic."

Id. at. 628. See also Vickers v. Nash Gen. Hosp. 78 F.3d 139 (4th Cir. 1996).

In fact, Plaintiff does not allege that SUNCOAST BEHAVIORAL was a participating hospital under §1395dd(e) and §1335cc. Plaintiff only contends that all "UHS" facilities are "participating hospitals," but fails to allege in the Notice of Intent the type of relationship between UHS and SUNCOAST BEHAVIORAL that would make SUNCOAST BEHAVIORAL a "UHS facility." See pages 1 of the Notice of Intent. Plaintiff has failed to properly allege the legal relationship between UHS and SUNCOAST BEHAVIORAL as to support such a contention.

WHEREFORE, UHS requests that this Court enter an Order Dismissing Complaint for Failure to State a Claim and all other relief this Court deems appropriate.

**B. Motion to Dismiss the "Initial" EMTALA Claim for Failure to State a Claim**

If in fact Plaintiff is alleging that SUNCOAST BEHAVIORAL violated subsection (b) of Federal EMTALA, then Plaintiff's "initial" EMTALA claim, starting on page 4 of Plaintiff's Notice of Intent, should be dismissed for failure to state a claim. Plaintiff alleges that he came to SUNCOAST BEHAVIORAL because he was feeling "unstable and suicidal." However, Plaintiff also attached a copy of the Incident/Investigative Report by the Manatee County Sheriff's Office ("Report"), which this Court may consider in evaluating Plaintiff's claims. See Winter v. Miami Beach Healthcare Group, Ltd., 917 So. 2d 973 (Fla. 3d DCA 2005)("When considering a motion to dismiss, a trial court must look only to the four corners of the complaint including the attachments...").

According to page 2 of the Report, it was determined by the Manatee County Sheriff's Office that Plaintiff was not in fact suffering from a medical emergency and did not meet Baker Act criteria. Mr. Burns further stated that he did not in fact want to hurt himself. If these facts are considered true for purposes of the Motion to Dismiss, Plaintiff clearly has failed to allege that an emergency medical condition existed as required by 1395dd(b).

WHEREFORE, UHS requests that this Court enter an Order Dismissing the Initial EMTALA Claim from the Notice of Intent for Failure to State a Claim and all other relief this Court deems appropriate.

**V. MOTION TO STRIKE ALLEGATIONS NOT RELATED TO EMTALA CLAIMS**

Starting on page 2 of the Notice of Intent, under the title "STATEMENT OF FACTS WITH ATTACHED SUPPORTING DOCUMENTS," and ending on page 4, just prior to the title "START OF EMTALA VIOLATIONS," Plaintiff provides information about his *prior*

11

visits at SUNCOAST BEHAVIORAL that have no bearing of any nature on his two Federal EMTALA claims contained in the Notice of Intent. Furthermore, Plaintiff includes allegations which appear to involve alleged Baker Act violations on page 6 of the Notice of Intent, regarding filing certain documents with the Court, which again, have no bearing on the outcome of the EMTALA Claims.

A party may move to strike or the court may strike redundant, immaterial, impertinent, or scandalous matter from any pleading at any time. Fla. R. Civ. P. 1.140.

WHEREFORE, UHS requests that this Court enter an Order Striking these Erroneous Allegations from the Notice of Intent and all other relief this Court deems appropriate.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was furnished via Electronic mail on March 9, 2016 to: Kevin Lee Burns, Plaintiff, 1940 N US Highway 220, Ellerbe, NC 28379, Burnskevin458@gmail.com.

THE LAW OFFICE OF JAY COHEN, P.A.
*Counsel for UNIVERSAL HEALTH SERVICES; SUNCOAST BEHAVIORAL HEALTH CENTER; JOSEPH ALTUCHOLF; CYNTHIA HARDEN; BRENDA HAMILTON; JUDITH SASNAUSSKAS; and J.HINMAN*
100 S.E. 3rd Avenue, Suite 1100
Fort Lauderdale, FL 33394
954-449-8700 / Fax: 954-763-6093
pleadings@jaycohenlaw.com

By: _____
Jeffrey L. Blostein, Fla. Bar No. 0086886
Elizabeth Schoenthal, Fla. Bar No. 0106672